IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MOJO IDEAS, INC., an Oregon corporation,

        Plaintiff,

        v.

J.W. CONSTRUCTION CO., INC., a Virginia corporation,

        Defendant.

Civ. No. 11-3134-CL

REPORT & RECOMMENDATION

CLARKE, Magistrate Judge.

This action arises out of an alleged breach of contract. Currently before the court is defendant's motion to dismiss (#6) for lack of personal jurisdiction. For the reasons stated below, the motion should be granted and this case should be dismissed.

**BACKGROUND**

Plaintiff Mojo Ideas, Inc. ("Mojo Ideas") is an Oregon corporation with its principal place of business in Grants Pass, Oregon. (Compl., ¶ 1). Both defendant J.W. Construction Company, Inc. ("J.W. Construction") and its agent[1] Corporate Jet Sales ("CJS") are Virginia

---

[1] J.W. Construction disputes that CJS is its agent. However, absent an evidentiary hearing, the court must treat the uncontroverted allegations in the Complaint as true and resolve disputed statements of facts in plaintiff's favor. Schwarzenegger, 374 F.3d at 800.

Page 1 – REPORT AND RECOMMENDATION

corporations with their respective principal places of business in Virginia. J.W. Construction does not conduct any business in Oregon, nor does it own any property, make any money, or sell any products through commerce in Oregon. (Def's Mem. Supp. Mot. to Dismiss, at pp. 4).

In May of 2011, Mojo Ideas began negotiations for the purchase of a helicopter owned by J.W. Construction and listed for sale on its behalf by its agent CJS on the website www.controller.com. (Compl., ¶ 2; Def's Mem. Supp. Mot. Dismiss, Dckt. # 7 at pp. 4; Pl's Mem. Resp. Mot. to Dismiss, Dckt # 11 at pp. 2). The parties ultimately reduced the agreed upon terms and conditions of the contract to a writing executed by Mojo Ideas on June 17 and by J.W. Construction on June 20. (Pl's Mem. Resp. Mot. to Dismiss at pp. 3; Decl. Jason Hart Supp. Pl's Resp. to Def's Mot to Dismiss ("Hart Decl."), ¶ 7 & Ex. 1). Under the terms of the contract, Mojo Ideas agreed to take delivery of the helicopter on or about June 24, 2011, in Hillsville, Virginia. (Hart Decl., Ex. 1 at pp. 2, ¶ 7). Mojo Ideas reserved the right to perform an initial pre-inspection of the helicopter in Virginia on or about June 21, 2011, and to complete a document titled "Exhibit A – Technical Acceptance Form" within 48 hours of that inspection either rejecting the helicopter or continue the contract with a formal pre-purchase inspection. (Id. at pp. 2, ¶ 3). Mojo Ideas agreed to place $100,000 of the $800,000 purchase price in an escrow account with an escrow agent in Oklahoma City, Oklahoma ("the Oklahoma Escrow Agent"), as a deposit which would be refundable on demand by Mojo Ideas at any time prior to the execution of the "Exhibit A." (Id. at ¶ 6). The agreement also included a choice-of-law provision stating "[t]his agreement is subject to and will be interpreted in accordance with the laws of the United States of America, Josephine County, Grants Pass, Oregon." (Id. at ¶ 10).

In June of 2011, Mojo Ideas hired and flew a mechanic to Virginia to perform an inspection of the helicopter, which revealed that additional repairs were required in order for the

Page 2 – REPORT AND RECOMMENDATION

helicopter to be considered "airworthy" under Federal Aviation Administration ("FAA") regulations. (Compl., ¶ 8; Pl's Mem. Resp. Mot. Dismiss at pp. 3). CJS arranged a conference call between Mojo Ideas and Jerry Wharton, President, sole stockholder and director of J.W. Construction, during which J.W. Construction agreed to undertake the necessary repairs. (Compl. ¶ 9; Pl's Mem. Resp. Mot. Dismiss at pp. 3). The parties continued to negotiate the terms of the sale during the course of numerous contacts between Mojo Ideas and CJS and, after multiple revisions completed by CJS, replaced the June 2011 contract with a new written contract. (Hart Decl., ¶ 9 & Ex. 2). Mojo Ideas executed the new contract on July 26, 2011, and J.W. Construction executed the new contract on August 2, 2011. (Hart Decl., Ex. 2). Under the terms of the new contract, Mojo Ideas agreed to take delivery of the helicopter on or about August 6, 2011, in "Dallas/Fort Worth," Texas. (Id. at pp. 2, ¶ 6). Mojo Ideas reserved the right to conduct a pre-purchase inspection no later than July 25, 2011, and to execute the "Exhibit A – Technical Acceptance Form" within 48 hours of the inspection electing to either reject the helicopter or to continue with the contract. (Id., ¶ 3). The new contract noted that the $100,000 deposit had been placed in the escrow account with the Oklahoma Escrow Agent and would be refundable on demand by Mojo Ideas at any time prior to the execution of the "Exhibit A." (Id. at ¶ 5). The new contract included the same choice-of-law provision as the original contract. (Id. at pp. 3, ¶9). J.W. Construction thereafter flew the helicopter from Virginia to the mechanic of its choice in Texas to have the required repairs completed. (Compl. ¶¶ 9-10; Pl's Mem. Resp. Mot. Dismiss, at pp. 3; Def's Mem. Supp. Mot. to Dismiss at pp. 4).

On August 2, 2011, Mojo Ideas was orally informed that the helicopter had passed the inspection, but was subsequently informed that additional repairs were required. (Compl., ¶ 13). Consequently, Mojo Ideas never executed the "Exhibit A – Technical Acceptance Form." (Id.).

Page 3 – REPORT AND RECOMMENDATION

On August 6, Mojo Ideas had not received delivery of the helicopter and requested J.W. Construction provide a firm delivery date, and informed J.W. Construction that it would withdraw from the contract if the helicopter could not be delivered according to the terms of the contract by mid-October. (Compl., ¶ 14). On October 14, 2011, Mojo Ideas had still not received delivery of the helicopter and therefore issued a notice of termination to J.W. Construction advising that Mojo Ideas would seek return of its deposit. (Compl., ¶ 15). On October 18, 2011, Mojo Ideas requested return of its deposit from the Oklahoma Escrow Agent; this request was declined on grounds that J.W. Construction had advised the Oklahoma Escrow Agent that it was entitled to the deposit. (Compl., ¶ 16).

On November 14, 2011, Mojo Ideas filed its Complaint (#1) in this court alleging claims for breach of contract and declaratory judgment that it is entitled to the return of its deposit. On November 17, 2011, the Oklahoma Escrow Agent filed a petition for interpleader in the District Court of Oklahoma County, Oklahoma, case number CJ-2011-9367 ("the Oklahoma Litigation"). (Decl. D. Christopher Burdett Supp. Pl's Resp. Def's Mot. to Dismiss ("Burdett Decl."), Dckt. # 13, ¶ 2 & Ex. 1). On December 6, 2011, J.W. Construction filed its Answer in the Oklahoma Litigation, asserting cross claims for breach of contract and promissory and equitable estoppel against Mojo Ideas and requesting the $100,000 escrow deposit. (Burdett Decl., ¶ 3 & Ex. 2).

## STANDARD

A defendant may move to dismiss for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis." Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994). "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." Id. "Second,

Page 4 – REPORT AND RECOMMENDATION

the exercise of jurisdiction must comport with federal due process." Id. at 1404-05. Because Oregon's long-arm statute is co-extensive with federal due process requirements, *see* OR. R. CIV. P. 4L, the jurisdictional analyses under state law and federal due process are the same, *see* Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).

The exercise of personal jurisdiction over a non-resident defendant is constitutionally proper only when the defendant has sufficient minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154 (1945). Personal jurisdiction may be exercised in one of two forms: general or specific. Boschetto, 539 F.3d at 1015. A defendant subject to general jurisdiction may be "haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). Therefore, "[f]or general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state." Id. A defendant who does not have continuous and systematic contacts with the forum may nevertheless be subject to specific jurisdiction when the cause of action arises out of a defendant's contact with or activities in the forum state. Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The exercise of specific jurisdiction over a nonresident defendant is appropriate when a three part test is satisfied: (1) the defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim must arise out of that activity; and (3) the exercise of jurisdiction must be reasonable. Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 111 (9th Cir. 2002).

Page 5 – REPORT AND RECOMMENDATION

## DISCUSSION

Mojo Ideas argues that this court may properly exercise specific personal jurisdiction over J.W. Construction because it engaged in extensive contract negotiations with Mojo Ideas over a six month period, entered into a contract under which it assumed obligations owed to Mojo Ideas, and expressly agreed that the contract would be governed by Oregon law, thereby directly invoking the benefits and protections of Oregon law.

"To have purposefully availed[2] itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" Boschetto, 539 F.3d at 1016 (*quoting* Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990)). The requirement is satisfied if the defendant has created "continuing obligations" with a resident of the forum. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). However, the mere existence of a contract with a resident of the forum, without more, is insufficient to establish personal jurisdiction over a nonresident defendant. Burger King v. Rudzewicz, 471 U.S. 462, 478-79, 105 S.Ct. 2174 (1985). Instead, courts must evaluate "prior negotiations, and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when determining whether the requisite minimum contacts exist. Id. at 479.

---

[2] To be subject to specific personal jurisdiction, a defendant must have either (1) "purposefully availed" himself of the privilege of conducting activities in the forum, or (2) "purposefully directed" his activities toward the forum. Schwarzenegger, 374 F.3d at 802. While the phrase "purposeful availment" is sometimes used so as to include both purposeful availment and purposeful direction, "availment and direction are, in fact, two distinct concepts." Id. A purposeful availment analysis is most often used in suits sounding in contract while a purposeful direction analysis is most often used in suits sounding in tort. Id. Courts evaluate "purposeful direction" using the three-part effects test from Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984). Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). The Calder "effects test" applies only to intentional torts, not to breach of contract claims. Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 460 (9th Cir. 2007). Here, Mojo Ideas alleges two claims which both sound in contract, therefore, the court applies the purposeful availment analysis.

Page 6 – REPORT AND RECOMMENDATION

In support of its argument that this court may properly exercise specific personal jurisdiction over J.W. Construction, Mojo Ideas relies on the following facts: (1) J.W. Construction engaged in extensive contract negotiations with Mojo Ideas over a period of six months; (2) as a result of which J.W. Construction assumed contractual duties owed to Mojo Ideas; (3) J.W. Construction was not entitled to performance of the contract until Mojo Ideas executed the "Exhibit A -- Technical Acceptance Form"; and (4) J.W. Construction expressly invoked benefits and protections of Oregon law by agreeing that Oregon law would govern the contract. These facts are insufficient to establish that J.W. Construction purposefully availed itself of the privilege of conducting business in the state of Oregon.

Supreme Court and Ninth Circuit precedent makes clear that for a non-resident defendant to be subject to specific personal jurisdiction on the basis of a contract, the contract itself must have a substantial connection with the forum state. *See, e.g.*, Burger King, 471 U.S. at 480 (a contract that envisioned continuing and wide-reaching contacts with the forum established that out of state defendant purposefully availed himself of the jurisdiction in the forum); Roth, 942 F.2d at 622 (where "most of the future of the contract would have centered on the forum" the contract was not "a one-shot deal that was merely negotiated and signed by one party in the forum," but dependent upon further activities in the forum state); *see also* Corp. Inv. Business Brokers v. Melcher, 824 F.2d 786, 790 (9th Cir. 1987) Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287-89 (9th Cir. 1977). Because "a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction,'" the determination whether a defendant purposefully established minimum contacts within the forum depends on an evaluation of not

Page 7 – REPORT AND RECOMMENDATION

only the terms of the contract but the parties prior negotiations, contemplated future consequences, and the parties actual course of dealing. Burger King, 471 U.S. at 479

While Mojo Ideas argues that J.W. Construction owed contractual obligations in Oregon, this misstates the facts. At most, J.W. Construction owed obligations to an Oregon *corporation*, none of which were to be performed in Oregon. The subject of the contract, the helicopter, was located in Virginia at the time the contract was first negotiated and later relocated to Texas when the contract was renegotiated. J.W. Construction's only significant performance obligations under the contract, repairs and delivery, were owed where the helicopter was located—first in Virginia and then in Texas. Delivery of the helicopter would fulfill J.W. Construction's obligations under the contract—the contract did not impose any further obligation on it to service, repair, or maintain the helicopter. In other words, the contract simply does not contemplate an ongoing relationship between the parties. J.W. Construction's key nexus to Oregon—the choice of law provision—is insufficient standing alone to confer specific jurisdiction. Burger King, 471 U.S. at 482. In sum, on the facts alleged and resolving all conflicts in favor of Mojo Ideas, there is simply no indication of any calculated effort by J.W. Construction to conduct business in Oregon. Because Mojo Ideas has failed to establish the first element of the three-part purposeful availment test, "the jurisdictional inquiry ends and the case must be dismissed." Boschetto, 539 F.3d at 1016 (*citing* Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006)).

Mojo Ideas points out that J.W. Construction listed the helicopter for sale through a website accessible to any Oregon resident with access to the internet. (Mem. Resp. Mot. Dismiss, pp. 2). However, Mojo Ideas does not elaborate on the significance of this fact. To the extent that Mojo Ideas argues J.W. Construction purposefully availed itself of the privilege of

Page 8 – REPORT AND RECOMMENDATION

doing business in Oregon by listing the helicopter for sale on the internet, this argument fails, even if in doing so it was reasonably foreseeable that the helicopter would be purchased by an Oregon citizen. "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 459 (9th Cir. 2007) (*citing* Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112, 107 S.Ct. 1026 (1987)). Likewise, "a mere web presence is insufficient to establish personal jurisdiction." Id. at 460 (*citing* Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997)). Therefore, this facts do not alter the court's analysis.

## RECOMMENDATION

For the reasons stated above, J.W. Construction's motion (#6) should be granted and this case should be dismissed for lack of personal jurisdiction.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by March 19, 2012. If objections are filed, any response to the objections is due by April 5, 2012.* See FED. R. CIV. P. 72, 6.

DATED this 29 day of February, 2012.

MARK D. CLARKE
United States Magistrate Judge